**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PREMERA BLUE CROSS,

            Petitioner,

    v.

WORLD PROFESSIONAL ASSOCIATION
FOR TRANSGENDER HEALTH,

           Respondent.

Case No.

**PREMERA'S MOTION TO COMPEL WPATH'S COMPLIANCE
WITH RULE 45 SUBPOENA**

Premera Blue Cross ("Premera") files this motion to compel World Professional Association for Transgender Health's ("WPATH")'s compliance with Premera's *subpoena duces tecum* pursuant to Rules 26, 37, and 45 of the Federal Rules of Civil Procedure, and in support thereof Premera states as follows:

## I.    INTRODUCTION

1.    This is an ancillary proceeding to compel non-party WPATH's compliance with a valid and narrowly tailored subpoena for documents that was issued in a pending class action lawsuit brought by L.B. and M.B., on behalf of their minor child and other similarly situated parties (the "Plaintiffs"), against Premera that is currently pending in the United States District Court for the Western District of Washington at Seattle and captioned as *L.B. and M.B., et al. v. Premera Blue Cross*; No. 2:23-cv-00953-TSZ (the "Underlying Action"). In the Underlying Action, Plaintiffs allege that Premera's Medical Policy, 7.01.557 – Gender Transition/Affirmation Surgery and Related Services (the "Medical Policy"), violates Section 1557 of the Affordable Care Act because it discriminates on the basis of sex and age. The Medical Policy requires minors reach the age of 18 before receiving gender affirming surgery.

78376786V.11

2.  Plaintiffs rely on WPATH's Standards of Care for gender-affirming surgery as the basis for their claim that Premera's Medical Policy discriminates on the basis of age and sex by concluding that surgery for minors under the age of 18 is not medically necessary.

3.  Premera is therefore entitled to understand the basis for the positions that WPATH has taken, particularly regarding surgery for individuals under the age of 18, and to better understand (1) whether WPATH's current position represents the views of all, or a majority, of its membership; (2) the process used to determine input on WPATH's Standards of Care; (3) the process by which WPATH reviewed the available scientific literature in forming its Standards of Care; and (4) the process by which WPATH decided to remove age limits in the most recent edition of its Standards of Care, after releasing a draft of the edition that still included age limits.

4.  The same questions were at issue in *Boe v. Marshall*, No. 2:22-cv-00104-LCB-CWB (M.D. Al.).  As here, the defendants in *Boe* issued a subpoena to WPATH.  WPATH objected to the subpoena issued in that case, but both the district court and the Eleventh Circuit found that the information sought was relevant, proportional, and not protected by a First Amendment privilege and ordered WPATH to produce documents.  Subsequently, WPATH has re-produced all the documents that it produced in *Boe v. Marshall* in other litigation brought in the District of Idaho (now pending before the Ninth Circuit) and in the Middle District of North Carolina.  *See* Ex. E, *Voe v. Mansfield*, Case No. 1:23-cv-864 (M.D.N.C. April 2, 2024), at 3; Ex. F, *Poe v. Labrador*, Case No. 1:23-cv-00269-BLW (D. Idaho), *appeal filed*, No. 24-142 (9th Cir. ) at 2.

5.  Premera seeks only to have WPATH reproduce the documents it produced in *Boe v. Marshall* here.  Yet after Premera issued a subpoena to WPATH for those same documents, and despite WPATH's agreement to re-produce them in other jurisdictions, WPATH served objections and refused to produce *any* documents based on relevance, burden, and First Amendment grounds.

2

6.      The District of Alabama's ruling in *Boe v. Marshall* precludes WPATH's objections here.  WPATH is collaterally estopped from relitigating the issues it lost in *Boe v. Marshall*.

7.      And aside from collateral estoppel, each of WPATH's objections is meritless: the material is highly relevant because Plaintiffs themselves placed WPATH's Standards of Care, and the decision-making process that underlies those Standards of Care, at the center of the Underlying Action. There is no burden associated with reproducing documents that have already been repeatedly produced elsewhere, in cases involving the same issues.

8.      Finally, WPATH's First Amendment argument fails because, as the district court and Eleventh Circuit concluded in *Boe v. Marshall*, a protective order is in place that will govern the production, Premera does not seek the identities of specific WPATH members, and WPATH has made no colorable argument that disclosure would create a chilling effect for WPATH or lead to harassment of its members.  WPATH should be compelled to reproduce the documents it produced in *Boe v. Marshall* here.

## II.    FACTUAL BACKGROUND

### A.    The Eighth Edition of the WPATH Standards of Care.

9.      WPATH describes itself as an "interdisciplinary professional and educational organization devoted to transgender health."[1]  WPATH publishes guidelines called the WPATH Standards of Care, which it claims "articulate a professional consensus about the psychiatric, psychological, medical, and surgical management of gender dysphoria." *Id.*

10.     In December 2021, WPATH released a draft of its 8th edition of its Standards of Care ("SOC 8").  The SOC 8 draft contained age minimums for gender-affirming surgeries: at least 15 years old for mastectomies, and at least 17 years old for vaginoplasties and hysterectomies. *See*

---

[1] *See* WPATH Mission and Vision, https://www.wpath.org/about/mission-and-vision (last visited Apr. 24, 2024).

3

Ex. A, Lisa Selin Davis, *Kid Gender Guidelines Not Driven by Science*, N.Y. POST (Sept. 29, 2022).

11.     Shortly after publication in September 2022, WPATH issued a document that removed these minimum age requirements. *See Correction*, 23 INT'L J. OF TRANSGENDER HEALTH S259 (2022), https://bit.ly/3qSqC9b.

**B.      The Underlying Litigation.**

12.     On June 27, 2023, Plaintiffs initiated the Underlying Action in the United States District Court for the Western District of Washington.  On September 21, 2023, Plaintiffs filed their Amended Complaint. *See* Ex. B ("Compl.").

13.     Plaintiffs' Complaint challenges Premera's decision that gender affirming care for A.B., a minor, was not medically necessary.  *Id.*  Premera's decision was based on generally accepted standards of medical practice summarized in Premera's Medical Policy.  *Id.*  Plaintiffs allege that the Medical Policy violates Section 1557 of the Affordable Care Act because it discriminates on the basis of sex and age.  *Id.*  The Medical Policy requires minors reach the age of 18 before receiving gender affirming surgery.  *Id.*

14.     Nearly every paragraph of Plaintiffs' Complaint refers to WPATH when describing the alleged standards for gender-affirming surgeries for minors.  *Id.* at ¶¶ 16, 47, 49, 56, 63, and 77.  Plaintiffs allege that the "WPATH Standards of Care, Version 8 details the requirements for gender-affirming medical and surgical treatment for adolescents under the age of 18" and claim that "[g]ender dysphoria can be assessed, diagnosed, and treated in accordance with evidence-based, widely accepted clinical practice guidelines, such as WPATH's Standards of Care, Version 8." *Id.* ¶¶ 16, 45.

4

15.     Plaintiffs repeat the allegation that "[t]he clinical practice guidelines for the treatment of gender dysphoria, such as WPATH's Standards of Care and the Endocrine Society's guidelines, are widely accepted as best practices for the treatment of adolescents and adults diagnosed with gender dysphoria and have been recognized as authoritative by leading medical organizations, including the American Academy of Pediatrics, AMA, and American Psychological Association, which agree that this care is safe, effective, and medically necessary for many adolescents suffering from gender dysphoria." *Id.* ¶ 47.

16.     Plaintiffs allege that WPATH provides the gold standard for assessing the medical necessity of gender-affirming surgeries for minors.  They allege that WPATH "confirms that chest surgery and reconstruction to treat gender dysphoria can be medically necessary for transgender adolescents under the age of 18." *Id.* ¶ 16; *see also* ¶ 56 ("Under the WPATH Standards of Care, transgender adolescents also may receive medically necessary chest reconstructive surgeries before the age of majority provided that the adolescent has lived in their affirmed gender for a significant period of time.").

17.     Plaintiffs' complaint deliberately puts WPATH's Standards of Care at the heart of their Section 1557 claims.  For named Plaintiff A.B. in particular, Plaintiffs allege that "A.B. met all of the requirements for coverage of gender affirming surgical care consistent with WPATH and generally accepted medical standards." *Id.* ¶ 77.

**C.     WPATH's document production in *Boe. v. Marshall.***

18.     In *Boe v. Marshall*, the parents of transgender minors challenged a statute that, among other things, restricted surgery for transgender minors.  As here, the plaintiffs in *Boe* relied on WPATH to support their claim that the law discriminated against transgender minors.

5

19.    In November 2022, the defendants in *Boe* sent a subpoena to WPATH seeking documents relating to WPATH's Standards of Care for minors diagnosed with gender dysphoria. *See Boe v. Marshall*, No. 2:22-cv-00104-LCB-CWB (M.D. Al. March 27, 2023) (Opinion & Order Denying WPATH's Motion to Quash), Ex. C at 1-2.  There, as is the case here, "WPATH's standards for treating gender dysphoria in minors go to 'the very heart' of this case.'" *Id.* at 5.

20.    WPATH and the defendants in *Boe v. Marshall* met and conferred, and when WPATH expressed concerns about undue burden, the defendants withdrew several requests and limited their requests to include the following:

a.  "statements, treatment guidelines, and standards of care regarding transitioning treatments";

b.  WPATH's "consideration, if any, of the UK's NICE literature reviews, the Swedish and French statements regarding transitioning care for minors, and certain other literature related to transitioning minors";

c.  WPATH's "reaction to members' concerns about pediatric transitioning care in America";

d.  WPATH's "involvement, if any, in the creation of standards of care or diagnostic standards for other organizations related to pediatric transitioning"; and

e.  WPATH's "review of the literature related to transitioning treatments for minors."

*Id.* at 2.

21.    WPATH moved to quash the subpoena in *Boe v. Marshall* on the same grounds it relies on here: relevance, burden, and First Amendment associational privilege.  *Id.*  The district court denied the motion, finding that the information sought by the subpoenas was "unquestionably relevant"; the burden of WPATH's production was not disproportionate to the needs of the case; and the First Amendment did not justify quashing the subpoena.  *Id.* at 5-9.

78376786V.11

22.     WPATH then sought a writ of mandamus from the Eleventh Circuit, which denied the petition on the same grounds.  *See* Ex. D, *Boe v. Marshall*, No. 22-1107 (11th Cir. August 21, 2023) (Order on Petition for Writ of Mandamus) (affirming "the district court did not abuse its discretion in determining that the subpoena does not seek the identities of members or associates of the organization, a protective order shields that information from disclosures, and there is insufficient evidence that disclosure would result in Petitioner's members being harassed, a loss of or deterrence from membership, or another chilling effect").  WPATH was therefore ordered to produce, and did produce, documents highly relevant both to the *Boe v. Marshall* dispute and the Underlying Action here.

23.     WPATH subsequently received subpoenas for the documents it produced in *Boe v. Marshall* in other lawsuits concerning similar issues, and WPATH has re-produced its production in at least two other cases.  *See* Ex. E at 3; Ex. F. at 2.

**D.     Premera's subpoena to WPATH.**

24.     Due to the central issue of  WPATH to Plaintiffs' claims in the Underlying Action, Premera served WPATH with a subpoena for documents on February 14, 2024.[2]  *See* Ex. G. Premera's initial subpoena was narrow in scope: it only included one request seeking "all Communications and Documents [WPATH] produced in response to subpoenas issued by parties litigating *Boe v. Marshall*, No. 2:22-cv-184-LBC (M.D. Ala.)."  *Id*.  In other words, Premera merely requested WPATH re-produce documents it had already collected, reviewed, and produced on multiple occasions to eliminate any undue burden or expenses on WPATH.

---

[2] The parties in the Underlying Action are currently conducting discovery.  Expert disclosures are due on May 15, 2024, rebuttal expert disclosures are due June 17, 2024, and the close of discovery is July 31, 2024. *See* Dkt. Nos. 25, 26.

7

78376786V.11

25.     On March 1, 2024, WPATH objected to Premera's subpoena on grounds of relevance, proportionality, and First Amendment associational privilege (all of which were raised and rejected in *Boe v. Marshall*) and further objected to the Western District of Washington—the location of the Underlying Action—as the place of compliance.  *See* Ex. H.  WPATH refused to produce any documents.  *Id.*

26.     On March 8, 2024 at 4 pm ET, the parties met and conferred telephonically. Participants for Premera included Gwendolyn C. Payton and Stephanie N. Bedard, and participants for WPATH included Cortlin Lannin, Michael Rosenthal, and Brenden Cline.  Premera attempted to resolve the differences between the parties and offered to narrow its subpoena just to documents and communications that reference or concern an age limitation for gender-affirming surgeries, but WPATH refused any compromise.  Counsel for WPATH also said it would refuse to produce documents in Washington.

27.     On March 15, 2024, Premera served WPATH with an identical subpoena re-setting the place of compliance in Chicago, Illinois.  *See* Ex. I (the "Subpoena").

28.     On March 21, 2024, and March 29, 2024, WPATH reiterated the same boilerplate objections and again refused to produce any documents.  *See* Exs. J, K.

## III.    LEGAL STANDARD

29.     The scope of discovery is broad, and parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Rule 45(d) provides that in response to an objection to a subpoena for documents, the serving party may move the court for the district where compliance is required for an order compelling production.  Fed. R. Civ. P. 45(d)(2)(B)(i).  Rule 26's relevance requirement also applies to the scope of discovery permissible under Rule 45.  *See* Advisory

8

78376786V.11

Committee Note to the 1970 Amendments to Rule 45 (noting that the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules").

## IV. ARGUMENT

30. The Plaintiffs in the Underlying Action claim that Premera discriminates on the bases of age and sex because it does not follow the WPATH Standards of Care. Documents about the unanimity, reliability, and strength of the WPATH guidelines are directly relevant both to Plaintiffs' claims and Premera's defenses.

31. The targeted discovery Premera seeks from WPATH—a request for documents that WPATH already produced elsewhere many times—is directly relevant to Plaintiffs' claims and Premera's defenses, is proportional to the needs of this case, and places no burden on WPATH. Premera conferred with counsel for WPATH in an effort to avoid motions practice, but WPATH continues to refuse to respond to the Subpoena.

**A.      Collateral estoppel precludes WPATH from relitigating the issues before this Court.**

32. The Court should grant Premera's motion to compel for the same reasons that the District of Alabama denied WPATH's motion to quash an identical subpoena in the *Boe v. Marshall* case, as discussed below. But the Court need not revisit the merits because WPATH is precluded by collateral estoppel from relitigating this issue.

33. "The doctrine of collateral estoppel provides that 'once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation.'" *Harrell v. U.S. Postal Serv.*, 445 F.3d 913, 921 (7th Cir. 2006) (citing *United States v. Mendoza*, 464 U.S. 154, 158 (1984)). Collateral estoppel applies to motions to quash and motions to compel enforcement of subpoenas.

9

Where a party "or its privy has already litigated the relevant issues elsewhere, collateral estoppel is a legitimate consequence" in a subsequent action to enforce or quash a subpoena. *In re Bestwall LLC*, 47 F.4th 233, 246 (3d Cir. 2022) (citing *Subpoena Duces Tecum Issued to CFTC*, 439 F.3d 740, 746 (D.C. Cir. 2006) (recognizing a "right to raise collateral estoppel as a ground to quash or modify a subpoena"); *In re Application of Am. Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir. 1989) (holding that "an attack on a subpoena" is barred "in federal court" where the subpoena has already been litigated in state court).

34.    Because Premera is the plaintiff seeking to enforce its subpoena against WPATH, offensive collateral estoppel applies.  "The 'offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party.'" *Harrell*, 445 F.3d at 921 (quoting *Mendoza*, 464 U.S. at 159 n.4).  Premera "seeks to invoke nonmutual collateral estoppel, which occurs when the plaintiff was a nonparty to the prior lawsuit." *Id.*

35.    Here, WPATH litigated the identical issues before this Court in *Boe v. Marshall* and lost.  WPATH moved to quash the subpoena in *Boe v. Marshall* on the same grounds it relies on here: relevance, burden, and First Amendment associational privilege.  The District of Alabama and then the Eleventh Circuit held that the documents were "unquestionably relevant."  Ex. C at 5. There, the plaintiffs "describe[d] WPATH as the initial developer of the '[t]he standards of care for treatment of transgender people, including transgender youth' and, in light of WPATH's standards, allege that the Act unconstitutionally denies transgender youths access to 'well-established medically necessary care.'"  Ex. C at 6.   The issue here is the same for purposes of this motion.  Here, Plaintiffs allege that Premera's Medical Policy violates Section 1557 of the Affordable Care Act because it discriminates on the basis of age and sex, and they rely on WPATH

10

78376786V.11

documents, policies, and information as the basis for that claim.  Compl. ¶¶ 16, 47, 49, 56, 63, and 77.  The burden and First Amendment issues litigated in *Boe v. Marshall* are the same as here.  Collateral estoppel precludes WPATH's objections to Premera's subpoena.

**B**.     **The documents sought are directly relevant to Plaintiffs' claims and Premera's defenses.**

36.     Aside from collateral estoppel, the Court should enforce Premera's subpoena for the same reasons that the District of Alabama in *Boe v. Marshall* denied WPATH's Motion to Quash.  There is no reasonable basis for WPATH to assert that the documents, which multiple other courts have already found relevant to cases concerning the medical necessity of gender-affirming surgeries for minors, are not relevant here.  A non-party's relevance objection "should be overruled if there is any reasonable possibility that the requested documents may be admissible, or may lead to the discovery of admissible evidence."  *SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., Ltd.*, No. 02 C 8133, 2003 WL 145419, at *3 (N.D. Ill. Jan. 21, 2003) (granting motion to compel compliance with document subpoena).  When a court's connection with a case is "ancillary to an action in another district," this Court has expressed hesitance "to pass judgment on what constitutes relevant evidence."  *Channelmark Corp. v. Destination Prods. Int'l, Inc.*, No. 99 C 214, 2000 WL 968818, at *2 (N.D. Ill. July 7, 2000) (citation omitted).

37.     In support of their argument that Premera's Medical Policy violates Section 1557 of the Affordable Care Act because it discriminates on the basis of age and sex, Plaintiffs rely on WPATH policies and information as the basis for that claim.  Compl. ¶¶ 16, 47, 49, 56, 63, and 77.

38.     Plaintiffs attempted to make the same relevance arguments in *Boe v. Marshall*, to no avail: the district court in that case denied WPATH's motion, finding that the information was "unquestionably relevant."  Ex. C at 5.  In *Boe v. Marshall*, as here, the plaintiffs alleged that the defendants "unconstitutionally denie[d] transgender youths access to 'well-established medically

11

necessary care.'" *Id.* at 6.  And in an amicus brief in *Boe* to which WPATH itself was a signatory, WPATH's Standards were referred to as "widely accepted and established, evidence based clinical guidelines, which were developed through a robust and transparent process, employing the same scientific rigor that underpins other medical guidelines." *Id.* (cleaned up).  The district court in *Boe* held, and the Eleventh Circuit affirmed, that "WPATH's guidelines are part and parcel of Plaintiffs' proposed constitutional standard in this case." *Id.* at 7.

39.     The same is true here.  WPATH's narrow view of "relevance" misunderstands the broad scope of discovery Premera is entitled to under Rules 26 and 45.  WPATH's standards on the treatment of gender dysphoria—including policy positions, revisions to WPATH's standards, best practices, and areas of uniformity (or lack thereof) within WPATH's membership—are directly relevant to the controlling question in this case: whether current medical knowledge supports the medical necessity of the minor class members' gender-affirming surgeries, including whether minors under 18 can sufficiently provide informed consent for these irreversible procedures.[3]  Information relevant to WPATH's decision to change its Standards of Care to eliminate *any* age limitation on gender-affirming surgery will shed light on how WPATH came to that decision and what medical literature WPATH relied on in making that decision.

### C.     Premera's request is proportional, and there is little burden for WPATH to reproduce these documents again.

40.     The Subpoena is narrow in scope and only includes one Request for Production seeking "all Communications and Documents [WPATH] produced in response to subpoenas issued by parties litigating *Boe v. Marshall*, No. 2:22-cv-184-LBC (M.D. Ala.)." Ex. I.  Premera requests documents WPATH had already produced in *Boe v. Marshall*, a case involving similar issues, in

---

[3] WPATH's own internal documents reveal its members' concerns about minors' lack of capacity to give informed consent.  Mia Hughes, The WPATH Files, https://bit.ly/3IDVQtr (last visited Apr. 24, 2024).

78376786V.11

order to eliminate any undue burden or expense on WPATH to search, collect, and produce responsive documents.

41.    To comply with Premera's subpoena, WPATH need only re-produce documents it has already produced.  And it is without question that this highly relevant material cannot be obtained elsewhere.

42.    WPATH has no basis to assert it would be burdensome to reproduce those documents here when it has already produced them in multiple other jurisdictions, including in response to subpoenas issued in cases brought in the District of Idaho (now pending before the Ninth Circuit) and the Middle District of North Carolina.  *See* Ex. E at 3; Ex. F at 2.

**D.    Premera's tailored requests do not violate the First Amendment.**

43.    WPATH's cursory First Amendment objection lacks merit.  The Eleventh Circuit rejected this same argument when it ordered WPATH to produce these same documents in *Boe v. Marshall*.

44.    The First Amendment protects individuals and organizations from governments "abridging the[ir] freedom of speech."  U.S. Const. amend. I.  Courts have interpreted the First Amendment to create a qualified privilege from disclosure of certain activities protected by First Amendment freedom of speech and association.  *See, e.g.*, *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958); *Black Panther Party v. Smith*, 661 F.2d 1243 (D.C. Cir. 1981), *vacated as moot sub nom. Moore v. Black Panther Party*, 458 U.S. 1118 (1982).

45.    "[T]he party claiming a First Amendment privilege in an objection to a discovery request bears the burden to make a prima facie showing of the privilege's applicability."  *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 488 (10th Cir. 2011) (collecting cases).  A party "cannot meet its burden of proof with a blanket assertion of privilege."  *In re Grand Jury*

13

*Subpoena*, 831 F.2d 225, 228 (11th Cir. 1987). And "the First Amendment does not prohibit discovery into legitimate, relevant matters, even when such discovery may produce a chilling effect." *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 473 (M.D.N.C. 2003).

46. WPATH must therefore "show a reasonable probability that the compelled disclosure . . . will subject them to threats, harassment, or reprisals from either Government officials or private parties." *In re Grand Jury Proceeding*, 842 F.2d 1229, 1236 (11th Cir. 1988) (citing *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)); *see id.* at 1235 ("[A] merely subjective fear of future reprisal is insufficient.").

47. WPATH cannot show that disclosure would impose a cognizable burden on its First Amendment rights. WPATH attempted to make the same argument in *Boe v. Marshall* concerning these exact same documents, and its position was rejected. In *Boe*, the Eleventh Circuit affirmed the district court's determination that "the subpoena does not seek the identities of members or associates of the organization, a protective order shields that information from disclosures, and there is insufficient evidence that disclosure would result in Petitioner's members being harassed, a loss of or deterrence from membership, or another chilling effect." Ex. D at 2. The Eleventh Circuit further concluded that even if WPATH and the other interest groups at issue in that case had established that "disclosure would infringe on its associational rights," the State of Alabama had "demonstrated a compelling need for the information." *Id.*

48. So too here. As in *Boe v. Marshall*, Premera's subpoena does not seek WPATH's membership lists; thus, the information WPATH objects to producing is not typically covered by the associational privilege. *NAACP*, 357 U.S. at 463; *see also United States v. Comley*, 890 F.2d 539, 544 (1st Cir. 1989) ("[T]he magnitude of the [F]irst [A]mendment concerns seems less . . . where the extent of any disclosure of identities is speculative and is not the specific objective.").

14

78376786V.11

WPATH offers no adequate explanation of how complying with the subpoena restrains its free speech or associational rights, particularly given that these documents have already been freely produced elsewhere.

49.    By objecting wholesale to the subpoena, WPATH seems to object that any disclosure at all would have a chilling effect.  But if that were true, no third party discovery from an organization could ever be appropriate.  *See New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989) ("Absent a more specific explanation of the consequences of compliance with discovery, defendants failed to make the required initial showing of potential First Amendment infringement."); *see also Herbert v. Lando*, 441 U.S. 153, 176-77 (1979) (overruling First Amendment objection to discovery into the internal affairs of a news organization).  WPATH has therefore failed to show that Premera's subpoena violates its First Amendment rights.

## V.    CONCLUSION

For the foregoing reasons, Premera requests that the Court grant this Motion to Compel WPATH's Compliance with Rule 45 Subpoena and for such other and further relief to which it may show itself justly entitled.

Dated: April 24, 2024                          Respectfully submitted,

**PREMERA BLUE CROSS,**


By: */s/ Matthew R. Barrett*


Matthew R. Barrett (IL No. 6308549)
**KILPATRICK TOWNSEND STOCKTON LLP**
500 West Madison Street, Suite 3700
Chicago, Illinois 60661
(312) 606-3200
mbarrett@ktslaw.com

15

78376786V.11

Gwendolyn C. Payton (*pro hac vice forthcoming*) (WA No. 26752)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 Fifth Ave., Suite 3700
Seattle, WA 98101
Telephone: (206) 626-7714
Facsimile: (206) 623-6793
gpayton@ktslaw.com

Stephanie N. Bedard (*pro hac vice forthcoming*) (GA No. No. 825614)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
(404) 815-6500
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
sbedard@ktslaw.com

*Counsel for Petitioner Premera Blue Cross*

16